IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: REALPAGE, INC. RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | : : : : : : : : | NO. 3:23-MD-03071<br>MDL No. 3071<br><br>**Judge Waverly D. Crenshaw, Jr.**<br><br>THIS DOCUMENT RELATES TO:<br>ALL CASES |

## JOINT DECLARATION OF INTERIM CO-LEAD COUNSEL IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS AND FOR APPOINTMENT OF SETTLEMENT CLASS REPRESENTATIVES, SETTLEMENT CLASS COUNSEL, AND SETTLEMENT ADMINISTRATOR

We, Patrick Coughlin, Stacey Slaughter, and Swathi Bojedla, the undersigned Interim Co-Lead Counsel submit this Joint Declaration in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlements ("Motion"). Counsel hereby declare as follows:

1. The statements in this Declaration are made to the best of our knowledge, information, and belief. If called upon to testify, we could and would testify competently as to the truth of the matters stated herein.

2. The undersigned currently serve as Plaintiffs' Court-appointed Interim Co-Lead Counsel in the above-captioned case. (Dkt. 1068.)

3. Because this declaration is submitted in support of the Settlements, it is inadmissible in any subsequent proceedings, other than in connection with the Settlements. In the event the Settlements are not approved by the Court, this declaration and the statements contained herein are without prejudice to Plaintiffs' position on the merits of the Action.

4. Plaintiffs Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya

1

Haynes and 27 Defendants (collectively, "Settling Defendants"), have agreed to settle this class action litigation on a nationwide class basis.

5. Attached to this Declaration as Exhibit A is a chart summarizing the monetary and non-monetary cooperation terms of the Settlements by Settling Defendants. Exhibits A-1 through A-26 are true and correct copies of the Settlement Agreements between Plaintiffs and each Settling Defendant as follows:

| Ex. | Settling Defendant | Ex. | Settling Defendant |
|---|---|---|---|
| A-1 | Allied | A-14 | Greystar |
| A-2 | AIR | A-15 | Kairoi |
| A-3 | Avenue5 | A-16 | Knightvest |
| A-4 | Bell Partners | A-17 | Lantower |
| A-5 | BH Mgmt. | A-18 | Mission Rock |
| A-6 | Bozzuto Mgmt. | A-19 | Pinnacle |
| A-7 | Brookfield | A-20 | Prometheus |
| A-8 | CH | A-21 | Security Properties |
| A-9 | CONAM | A-22 | Sherman |
| A-10 | CWS | A-23 | Simpson |
| A-11 | ECI | A-24 | Thrive |
| A-12 | FCM | A-25 | Windsor |
| A-13 | FPI | A-26 | Winn[1] |

## I. LITIGATION HISTORY

6. Plaintiffs' claims have been vigorously prosecuted and contested at every stage of the litigation. Interim Co-Lead Counsel, Plaintiffs' Liaison Counsel, and Plaintiffs' Steering Committee have devoted thousands of hours to and invested significant sums in this litigation. (*See* Dkt. 1231-1.)

7. On October 18, 2022, Plaintiffs filed the first complaint in the litigation, alleging a conspiracy to share property owners' and managers' sensitive pricing and supply data, coordinated

---

[1] The settlement with Winn included two named "Winn" Defendants: WinnCompanies LLC and WinnResidential Manager Corp.

by RealPage, Inc., to fix prices for multifamily housing rentals across numerous Metropolitan Statistical Areas. Settling Defendants are property owners and managers.

8. On April 10, 2023, the JPML consolidated and transferred 21 pending cases to this Court. (Dkt. 1.)

9. On June 13, 2023, this Court issued an Order appointing Patrick Coughlin of Scott+Scott Attorneys at Law, LLP, Stacey Slaughter of Robins Kaplan LLP, and Swathi Bojedla of Hausfeld, LLP as Plaintiff's Interim Co-Lead Counsel; Tricia Herzfeld of Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC as Plaintiff's Liaison Counsel. A Steering Committee was also appointed. (Dkt. 278.) This Court re-designated Interim Co-Lead Counsel and Plaintiffs' Steering Committee on February 7, 2025. (Dkt. 1068.) Interim Co-Lead Counsel now seek appointment as Settlement Class Counsel for the proposed Settlement Class.

10. Plaintiffs filed their Consolidated Amended Complaint on June 16, 2023, and their First Amended Consolidated Class Action Complaint on July 5, 2023. (Dkt. 291, 314.) The parties briefed an initial round of motions to dismiss in July 2023. On August 7, 2023, the Court vacated the briefing and ordered Plaintiffs to file their Second Amended Consolidated Class Action Complaint by September 7, 2023, which they did. (Dkt. 495, 530.) In the intervening time, Plaintiffs also dismissed several underlying actions and substituted and corrected certain Defendants. (Dkt. 528, 536.) Defendants again sought dismissal of the case, filing eight motions to dismiss on October 9, 2023. (Dkt. 568-594.) On December 28, 2023, the Court denied Defendants' *omnibus* motion to dismiss and several other motions, while granting in part Defendants' motion to enforce class action waivers. (Dkt. 691.)

11. One Defendant, Apartment Income REIT Corp. ("AIR"), had a separate motion to dismiss, premised on their unique contract. (Dkt. 595, 596.) Before the Court ruled on AIR's motion, Plaintiffs settled with AIR. (Dkt. 711, 715.)

12. Thereafter, the parties proceeded with discovery, which is still ongoing.

13. Plaintiffs served their structured data requests on February 6, 2024. Initially, almost every Defendant proposed that Plaintiffs could accept data from RealPage to satisfy nearly all data production. Plaintiffs accordingly engaged in early and extensive discussions with RealPage. By July 2024, with the production of samples from multiple Defendants, Plaintiffs determined that, to fulfill their request for production, structured data would be required from all Defendants.

14. Plaintiffs found gaps in the structured data productions of several Defendants and engaged in cooperative negotiations with those Defendants to supplement their productions—which they have done. With all but two Defendants, Plaintiffs were able to resolve the issues without Court intervention through those negotiations which, in some cases, included in-person conferrals. Plaintiffs sought (and received) Court relief compelling additional data productions from those two Defendants, (*see* Dkt. 1076 & 1129) who produced supplemental data, concluding the structured data production process in June 2025.

15. To date, Defendants have produced 24 terabytes of structured data.

16. Plaintiffs began the document production process by holding conferences with Defendants in January 2024. Defendants required individual negotiations with each Defendant, which Plaintiffs protested but ultimately agreed to. Because Defendants insisted on individual negotiations, document production negotiations continued until the end of 2024.

17. Defendants began producing documents very near the completion deadline, with over half of productions received around or after the March 30, 2025 deadline.

4

18.  To date, Defendants have produced 14,778,268 documents.

19.  Plaintiffs have noticed over 140 depositions of non-settling Defendants for September and October, with additional depositions planned for November and beyond.

20.  Additionally, thus far, Plaintiffs have negotiated for over 40 depositions collectively from Settling Defendants.

21.  Depositions of the 10 Plaintiffs commenced in August and are expected to conclude in October based on the current schedule.

## II. SETTLEMENT NEGOTIATIONS

22.  On July 28, 2023, the Court appointed the Honorable Layn R. Phillips as the mediator for the litigation, and on August 4, 2023, the Court appointed Clay Cogman as an additional mediator. (Dkt. 434 & 475).

23.  In order to facilitate early resolution, the mediators held three, multi-party mediation sessions with certain Defendants, each of which lasted from 6 to 10 hours. These multi-party mediations occurred on October 24, 2023 (28 Defendants); March 15, 2024 (8 Defendants); and April 8, 2024 (20 Defendants).

24.  Interim Co-Lead Counsel on behalf of Plaintiffs have engaged with Defendants in smaller, more focused mediation sessions as well, *i.e.*, with Defendant Simpson (January 29, 2025; Defendants Greystar, ECI, and Bell (April 30, 2025); and Defendant Windsor (July 23, 2025).

25.  The mediators have also facilitated numerous additional communications between the parties, including hundreds of emails, calls, and extended discussions over monetary and non-monetary terms.

26.  Interim Co-Lead Counsel on behalf of Plaintiffs engaged in direct settlement negotiations with certain Defendants, most of which occurred after the mediators arranged for

discussions to begin. These direct negotiations involved Defendants Pinnacle, Prometheus, Sherman, Lantower, FPI, and Avenue5, among others. These Settlements likewise required Interim Co-Lead Counsel to conduct extensive negotiations with those Defendants via numerous emails, phone calls, and digital meetings to reach agreeable monetary and non-monetary terms.

27. Throughout the direct settlement negotiations, the mediators remained informed of the negotiations and frequently served as intermediaries so the parties could reach closure on the settlements. Like the mediated negotiations, these discussions were conducted at arm's length with Interim Co-Lead Counsel's rigorous attention to class interests.

28. Notably, almost every Defendant that ultimately settled initially engaged through the Court-appointed mediators.

29. Throughout all negotiations, Interim Co-Lead Counsel relied extensively on economic analysis and comprehensive document review to thoroughly assess the strengths and weaknesses of their claims against each Settling Defendant, ensuring every settlement agreement was entered into with a well-founded, good faith basis for acceptance.

### III. THE PROPOSED SETTLEMENTS

30. The Settlement Agreements between Plaintiffs and Settling Defendants are the product of hard-fought, arm's length negotiations by counsel highly experienced in complex antitrust class actions. At all times, both sides vigorously negotiated their respective positions. The negotiations were conducted in good faith, resulting in fair, reasonable, and adequate Settlements.

31. Before agreeing to any settlement, Interim Co-Lead Counsel personally consulted with each Plaintiff, all of which provided authority to enter into all 26 Settlements now before the Court.

6

32. Plaintiffs have reached Settlements with 26 Settling Defendants for which they seek preliminary approval. A chart summarizing the significant monetary and non-monetary components of each Settlement Agreement is attached as Exhibit A.

33. The total monetary value of these Settlements is $141,800,000.

34. With few exceptions, Settling Defendants are many of the smallest Defendants in the case, and many are property managers only. Generally, this means that the volume of commerce—the amount of rent revenue Defendants generated over the class period—impacted by these Settlements is small compared to the overall volume of commerce at issue in the case.

35. Although the precise cooperation terms vary somewhat across the Settlements, Plaintiffs have obtained agreements from Settling Defendants for: (1) document and data production (including in commitments for informal conferences on data issues from most Settling Defendants); (2) numerous 30(b)(1) and 30(b)(6) depositions, which will assist in continuing to develop evidence of a conspiracy as to the remaining defendants; (3) attorney proffers, which will, among other things, help prepare for those depositions; (4) assistance in authenticating documents for trial; (5) in-person trial witnesses; and (6) agreements to respond to limited interrogatories. These cooperation terms are valuable for the Settlement Class and will (among other things) facilitate Plaintiffs in pursuing their class claims against RealPage and the other remaining Defendants (which include some of the largest Defendants in the MDL).

36. In particular, Settling Defendants have agreed not to provide nonpublic data to RealPage for use in competitor pricing recommendations and to refrain from using RealPage's revenue management software that relies on non-public competitor data to make pricing

recommendations.[2] Additionally, Settling Defendants, with some exceptions, have agreed to waive any right to enforce arbitration clauses, class action waivers, and jury trial waivers as to the claims at issue. Plaintiffs and Interim Co-Lead Counsel believe these Settlements to be in the best interests of the Settlement Class. Not only do they secure a large amount of money relative to the market power of the Settling Defendants, they also secure valuable cooperation from the Settling Defendants for the remainder of the litigation. Most importantly, the Settling Defendants will cease their allegedly anticompetitive conduct, securing future benefits for the Settlement Class and other renters.

### IV. DEFERRAL OF NOTICE

37. At an appropriate time before seeking final approval of the Settlements, Plaintiffs propose to submit to the Court for approval a proposed Notice Plan that complies with Federal Rule of Civil Procedure 23(c)(2)(B) by providing due process and the best practicable notice to all identifiable members of the proposed Settlement Class who would be bound by it.

38. Postponing notice and approval of a plan of allocation will realize three important efficiencies.

39. First, Plaintiffs' experts are still analyzing more than 24 terabytes of structured data produced by Defendants, which will enable them to calculate alleged overcharges and enable counsel to develop a fair, reasonable, and equitable allocation plan.

40. Second, the 24 terabytes of structured data produced by Defendants contain the names and contact information of Settlement Class members from RealPage RMS databases.

---

[2] For certain Settling Defendants, the individual settlement obligates them to make efforts to alter contract terms with RealPage to achieve these limitations.

Deferring notice until Plaintiffs' experts have completed their analysis will eliminate duplicative efforts by the proposed settlement administrator, Angeion.

41. Third, Plaintiffs estimate that the Settlement Class includes millions of individuals in total. Providing notice to a class of this size is a significant expense, and, in Interim Co-Lead Counsel's experience, noticing multiple settlements in a single notice results in meaningful efficiencies and cost savings for the Settlement Class.

42. Plaintiffs propose to update the Court on their progress in preparing notice and formulating the allocation plan through their regular settlement reports to the Court.

## V. SELECTION OF SETTLEMENT ADMINISTRATOR

43. As part of preparing to move for preliminary approval, Plaintiffs engaged in a competitive bidding process that was designed to ensure selection of the most qualified and cost-effective Settlement Administrator.

44. The bidding process began with soliciting proposals from six established claims administration companies. This broad initial field ensured competitive pricing and allowed evaluation of diverse administrative approaches and capabilities.

45. Following initial proposal review, Interim Co-Lead Counsel conducted virtual interviews with the four top bidders. Two companies advanced to a final evaluation round involving additional detailed questions and additional interviews, ensuring thorough vetting of the top candidates.

46. This multi-stage evaluation process, which took several months, reflects Interim Co-Lead Counsel's diligent stewardship of settlement funds and commitment to selecting the administrator best positioned to serve the Settlement Class's interests most effectively.

47. As a result of this comprehensive process, Interim Co-Lead Counsel propose that Angeion Group, LLC, act as the Settlement Administrator on behalf of the Settlement Class.

48. Several factors distinguished Angeion's proposal during the competitive evaluation. Angeion's team demonstrated exceptional expertise and deep experience in complex class action administration; Angeion employs comprehensive data security measures essential for protecting sensitive class member information throughout the administration process; and Angeion's proposal also includes sophisticated fraud prevention measures protecting settlement fund integrity. Most significantly, Angeion emerged as the lowest-cost provider among all qualified bidders. This cost advantage persisted even after competing bidders made pricing concessions during negotiations.

We declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct to the best of our knowledge, information, and belief. Executed on the dates and in the locations set forth below:

| | |
|---|---|
| Executed on October 1, 2025, in San Diego, CA. | /s/ Patrick J. Coughlin<br>Patrick J. Coughlin<br>**SCOTT+SCOTT ATTORNEYS AT LAW LLP**<br>600 West Broadway, Suite 3300<br>San Diego, CA 92101<br>Telephone: (619) 798-5325<br>Facsimile: (619) 233-0508<br>pcoughlin@scott-scott.com |
| Executed on October 1, 2025, in Minneapolis, MN. | /s/ Stacey Slaughter<br>Stacey Slaughter<br>**ROBINS KAPLAN LLP**<br>800 LaSalle Avenue, Suite 2800<br>Minneapolis, MN 55402<br>Telephone: (612) 349-8500<br>Facsimile: (612) 339-4181<br>sslaughter@robinskaplan.com |
| Executed on October 1, 2025, in Washington, D.C. | /s/ Swathi Bojedla<br>**HAUSFELD LLP** |

10

|  | 1200 17th St NW, Suite 600<br>Washington, DC 20036<br>Telephone: (202) 540-7200<br>sbojedla@hausfeld.com |
|---|---|