| | | |
|---|---|---|
| IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II) | ) ) ) ) ) ) | Case No. 3:23-md-03071<br>MDL No. 3071<br><br>THIS DOCUMENT RELATES TO:<br>ALL CASES |

## MEMORANDUM OPINION AND ORDER

After months of diligent and substantive work, Plaintiffs and some Defendants presented multiple settlement agreements for preliminary approval on apartment renters' antitrust price-fixing claims. On November 21, 2025, the Court preliminarily certified a renters settlement class and found the terms of the settlement agreements to be "fair, reasonable, and adequate." (Doc. No. 1313 at 3). In May 2026, Plaintiffs presented an additional eleven settlement agreements for preliminary approval. (Doc. No. 1396). Again, the Court certified a renters settlement class and found the terms of the settlement agreements to be "fair, reasonable, and adequate." (Doc. No. 1406 at 3). Based upon an incomplete, if not erroneous reading of the settlement agreements, the Attorneys General of the District of Columbia, Kentucky, Maryland, New Jersey, and Washington ("State AGs") have filed a motion to intervene and to clarify or modify the preliminary approval orders pursuant to Federal Rules of Civil Procedure 59 and 60. (Doc. No. 1415). The motion is ripe for decision. (Doc. Nos. 1430, 1431, 1432, 1433, and 1448). For the reasons that follow, the State AGs' concern that the settlement agreements and orders of preliminary approval somehow impair or impinge on their enforcement duties is more imagined than real because they do no such thing. The settling parties have carefully and respectfully carved out from the settlement agreements the State AGs' authority to seek civil fines and injunctive relief. What the State AGs cannot do is seek double or duplicate damages for those class members that will be compensated

from the multi-million dollar class settlement fund. Accordingly, the State AGs' motion (Doc. No. 1415) is **DENIED**.

First, the State AGs overlook that the settlement agreements distinguish between class members' claims and state or sovereign claims. The settling parties agreed that claims not released in their settlement agreements are claims brought by states "to vindicate sovereign or quasi-sovereign interests," which includes pursuing additional injunctive relief or civil penalties. (Doc. No. 1250 at 58 ¶ 4(b)). What the settlement agreements did do is provide monetary relief to class members on their claims, *not* the states. Tellingly, the State AGs offer no persuasive legal authority to contradict the legal authority cited by the settling parties that states' *parens patriae* claims duplicate class action monetary claims for damages and that *parens patriae* claims belong to class members rather than the states. (Compare Doc. No. 1448-1 at 9–12, with Doc. No. 1415-1 at 18–19). Indeed, the State AGs' position would lead to confusion and chaos, impeding settlements because Defendants could not obtain certainty and closure on class members' damages claims. That would not advance the public's interest.

Second, perhaps realizing that their attempt to collect double damages for class member renters is doomed, the State AGs next argue that the injunction prohibiting such double-damages efforts is procedurally improper. (Doc. No. 1415-1 at 12). The words in the injunction put that concern in proper context. The Orders on Preliminary Approval of Settlements (Doc. Nos. 1313, 1407) enjoin the settling class member renters from "prosecuting, pursuing, maintaining, or enforcing any Released Claims against Set 1 Settling Defendants in any forum." As the Court explained: "This injunction is necessary to protect, effectuate, and aid the Settlements, this Order, and the Court's jurisdiction and judgments." (Doc. No. 1313 at 6–7; Doc. No. 1407 at 3–4). It is not only logical to give the settling parties certainty, closure, and protection from an award of

2

double damages to settling class members, but it is legally proper under the All Writs Act, 28 U.S.C. § 1651. Again, the State AGs offer no legal authority contradicting the well-established principle that courts have long relied on the All Writs Act to enjoin class members or those proceeding on their behalf from proceeding in state courts on claims that mirror or duplicate claims released in settlement agreements. See, e.g., In re Baldwin-United Corp., 770 F.2d 328, 336 (2d Cir. 1985); In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig., 93 F. Supp. 2d 876, 879 (M.D. Tenn. 2000). The Settling Defendants themselves also recognize that the settlements leave the State AGs free to pursue their sovereign claims: "Indeed, the settlements release claims 'direct[ly]' brought by class members and claims brought 'representative[ly] on behalf of class members.' This Court correspondingly enjoined 'Class Members (and any person or entity purporting to act or bring claims on behalf of Settlement Class Members).' By contrast, the Five AGs are free to keep pursuing their sovereign claims for civil penalties and injunctive relief because the settlements do not release those claims." (Doc. No. 1448-1 at 14–15) (citations omitted). Because the Court's injunction is in aid of its jurisdiction to enforce and effectuate the settlement agreements in this complex antitrust multi-district action, there is no violation of the Anti-Injunction Act, 28 U.S.C. § 2283. (See cases cited in Doc. No. 1448-1 at 15–16).

Third, it is in the public's interest to deny the State AGs' motion so that thousands of class member renters and settling defendants can benefit from their work. Denying the motion also vindicates the competitive protections embodied in the antitrust laws.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE

3