UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II)** | ) ) ) ) ) ) ) | **Case No. 3:23-md-3071**<br><br>**This Document Relates to: ALL CASES** |

**ORDER**

Having reviewed Plaintiffs' Motion for Interim Attorneys' Fees, Reimbursement of Litigation Expenses, Future Litigation Expense Fund, and Service Awards for Named Plaintiffs and Memorandum of Law (Doc. Nos. 1475 and 1476), Joint Declaration (Doc. No. 1477), Plaintiffs' Reply, (Doc. No. 1547), and the record, the Court rules as follows.

1. Plaintiffs' Motion for Interim Attorneys' Fees, Reimbursement of Litigation Expenses, Future Litigation Expense Fund, and Service Awards for Named Plaintiffs (Doc. No. 1475) is **GRANTED**.

2. The Court has considered the case law and other authority and finds that awards of attorneys' fees and reimbursement of expenses to Plaintiffs and their counsel are appropriate under Fed. R. Civ. P. 23(h) and Fed. R. Civ. P. 54(d)(2). Notice of the request for fees and reimbursement of expenses was provided to the potential class members by direct and published notice, and a settlement website that includes relevant documents and pleadings.

3. The Court awards fees to Plaintiffs' Counsel using the percentage of the fund approach. When counsel recovers a common fund for the benefit of class, courts have long recognized that an award of attorneys' fees and other costs of the litigation should be recovered from that common fund. See Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980).

4. The percentage of the fund approach is the preferred method where, as here, "a substantial common fund has been established for the benefit of class members through the efforts of class counsel." In re Se. Milk Antitrust Litig. ("Milk"), 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013). The requested fee of one-third of the fund "is certainly within the range often awarded in common fund cases, both nationwide and in the Sixth Circuit." Id. at *3. The requested award is warranted given the exceptional result Plaintiffs' Counsel achieved in the face of substantial risk. Id.

5. The requested fee award satisfies all the factors the Sixth Circuit articulated in Ramey v. Cincinnati Enquirer, Inc., 508 F.2d 1188, 1196 (6th Cir. 1974):

a. The non-reversionary cash benefit provided by the Settlement Agreements, totaling $359,925,000, along with the fundamental change in behavior of owners and property managers in the multi-family residential property industry, is an excellent outcome for the Class;

b. Society has a strong interest in compensating Plaintiffs' Counsel for bringing a class action where, as here, it is unlikely that an individual could obtain the same relief, thereby encouraging other counsel to bring similar litigation in the future, see Milk, 2013 WL 2155387, at *5;

c. Fees and reimbursement of litigation expenses in this case were entirely contingent upon the success of Plaintiffs' Counsel, creating a serious risk that they would not receive any compensation in the absence of settlement or victory at trial, see Lonardo v. Travelers Indem. Co., 706 F. Supp. 2d 766, 796 (N.D. Ohio 2010);

d. Co-Lead and Liaison Counsel have devoted over a hundred thousand hours to vigorously litigating this case, and the significance and extent of their

contributions to the case are substantial;

e. This antitrust case is inherently complex, see In re Skelaxin (Metaxalone) Antitrust Litig., 2014 WL 2946459, at *3 (E.D. Tenn. June 30, 2014), involving over 50 Defendants with demanding questions of fact and liability arising from the alleged use of algorithmic pricing software to coordinate rents across the multifamily rental properties in the United States. Plaintiffs' initiated this case long before any governmental agency took action. Moreover, prosecution of the case required exceptional coordination and collaboration among Plaintiffs' Counsel to meet the demands of this heavily contested litigation and mediation obligations; and

f. Plaintiffs' Counsel, who are among the most experienced and successful class action and antitrust practitioners in the country, have litigated the case with exceptional skill and professionalism.

6. Although not required, courts may apply a lodestar "cross-check" on the reasonableness of the fee calculated as a percentage of the fund. The Court has confirmed the reasonableness of the requested fee award request by conducting a lodestar cross-check. "To determine the lodestar figure, the court multiplies the number of hours 'reasonably expended' on the litigation by a 'reasonable hourly rate.'" See Gascho v. Glob. Fitness Holdings, LLC, 822 F.3d 269, 279 (6th Cir. 2016) (quoting Bldg. Serv. Loc. 47 Cleaning Contractors Pension Plan v. Grandview Raceway, 46 F.3d 1392, 1401 (6th Cir. 1995)). The "sum may then be 'increased by a "multiplier" to account for the costs and risks involved in the litigation, as well as the complexities of the case and the size of the recovery.'" In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig., 268 F. Supp. 2d 907, 922 (N.D. Ohio 2003) (citation omitted).

7. A cross-check of the lodestar incurred by Co-Lead and Liaison Counsel

indicates that the fee requested constitutes fair and reasonable compensation for the risks assumed, the work done, and the benefits achieved for the members of the settlement class. The lodestar currently totals $105,063,090.50 when using Co-Lead and Liaison Counsel's current billing rates for complex class action litigation.

8. Using the lodestar cross-check methodology and reviewing the total fees awarded with the lodestar generated on these cases from the inception of the litigation to March 31, 2026, the requested fee implies a lodestar multiplier of at most 1.1, even without accounting for additional attorneys' fees reasonably incurred by the Plaintiffs' Steering Committee firms and other supporting firms. This multiplier falls within the range regularly accepted in this Circuit. See Milk, 2013 WL 2155387, at *4 (citing cases with multipliers from 1.3 to 4.5); Skelaxin, 2014 WL 2946459, at *2 (citing cases with multipliers between 3.04 and 5.9); Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc., 2020 WL 3053468, at *1 (M.D. Tenn. May 29, 2020) (finding 3.12 "within an acceptable range" and identifying cases awarding multipliers up to 6.0). Plaintiffs' Counsel's submitted time reflects their most recent (2026) billing rates, which courts have recognized is appropriate to "compensate for the delay in payment during the pendency of the litigation." In re UnumProvident Corp. Deriv. Litig., 2010 WL 289179, at *6 (E.D. Tenn. Jan. 20, 2010).

9. The requested fee award of $ 119,975,000, plus earned interest, is **GRANTED**.

10. Co-Lead Counsel are authorized to allocate the attorneys' fees awarded herein among counsel who performed work on behalf of the Settlement Class in accordance with Co-Lead Counsel's assessment of each firm's contribution to the prosecution of this litigation.

11. Plaintiffs' Counsel reasonably incurred a total of $14,674,964.91 in litigation expenses in prosecuting this case. As detailed in the supporting declarations submitted with

the motion, the expenses incurred by each firm were reviewed to ensure that they were for the common benefit of the Class. Such expenses and costs include, among other things: filing fees, assessments, mailing and courier charges, photocopying, legal research tools, travel, deposition-related costs and transcripts, mediator fees, and expert and witness fees. Such expenses are "routinely charged" by attorneys with hourly clients and "should be reimbursed out of the Settlement Fund." In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 535 (E.D. Mich. 2003); see also Momenta, 2020 WL 3053468, at 2 (granting reimbursement). The past litigation expenses incurred in the prosecution of this case and awarded in this Order shall be reimbursed from the Settlement Fund.

12. The requested expense reimbursement of $14,674,964.91, plus earned interest, for litigation expenses incurred through June 2026 is **GRANTED**.

13. The Court **GRANTS** Plaintiffs' request for interest earned on the above award of attorneys' fees and reimbursement of past litigation expenses from the date the funds were deposited in the Escrow Account until payment of such attorneys' fees plus expenses, at the rate earned by the Settlement Fund.

14. Plaintiffs' Counsel's request for $3,500,000 to establish a fund for future reasonable litigation expenses incurred in this litigation for the common benefit of Plaintiffs and the proposed class is **GRANTED**. Allowing a portion of class settlement funds to be set aside for prospective litigation expenses is a well-accepted practice in this Circuit. See, e.g., In re Auto. Parts Antitrust Litig., 2018 WL 7108072, at *2 (E.D. Mich. Nov. 5, 2018) (approving request to set aside $3,455,423.97 for use in future litigation); In re Auto Parts Antitrust Litig., 2016 WL 9459355, at *2 (E.D. Mich. Nov. 29, 2016) (approving request to set aside nearly $10 million for use in future litigation); In re Auto Parts Antitrust Litig., 2015

WL 13715591, at *2 (E.D. Mich. Dec. 7, 2015) (approving request to set aside $2,947,395 for use in future litigation); see also Manual for Complex Litigation (Fourth), §13.21 ("[P]artial settlements may provide funds needed to pursue the litigation. ").

15. Following entry of an order by the Court granting final approval of the Settlement (even if such order is subject to appeal), the attorneys' fees and past and future litigation expenses awarded by the Court shall be payable from the Settlement Fund immediately upon entry by the Court of an order awarding such amounts, notwithstanding the existence of any timely filed objections thereto, or potential for appeal or collateral attack on the Settlements or any part thereof. However, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, any attorneys' fees and expense award is overturned or reduced, or if the Settlements are terminated or not approved by the Court, or if there is an appeal and any order approving the Settlements do not become final and binding upon the Settlement Class, then, within 30 business days after receiving such an order from a court of appropriate jurisdiction, each Plaintiffs' Counsel that has received any fees or expenses shall refund to the Settlement Fund such funds previously paid to it, plus interest thereon at the same rate as earned on the Settlement Fund, in an amount consistent with such reversal or reduction. Each law firm that serves as Plaintiffs' Counsel, as a condition of receiving a portion of the attorneys' fees and expense award, on behalf of itself and each partner, shareholder, or member of it, agrees that the law firm and its partners, shareholders, and/or members are subject to the jurisdiction of this Court for purposes of enforcing the provisions of this paragraph.

16. The request for a service award of $10,000 for each Named Plaintiff, Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker,

Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes, is **GRANTED**.

17. These service awards are justified by the significant time and resources they invested into supervising and prosecuting this case that benefitted the settlements obtained. See Lonardo, 706 F. Supp. 2d at 787; UnumProvident, 2010 WL 289179, at *9. The service awards are also justified as an economic incentive to spur individuals and entities to bring antitrust litigation even though their own claims may not be sizable. See In re Polyurethane Foam Antitrust Litig., 168 F. Supp. 3d 985, 1000 (N.D. Ohio 2016) (noting that courts have stressed that incentive awards are "efficacious ways of encouraging members of a class to become class representatives . . . .") (citation omitted).

18. Co-Lead Counsel are authorized to pay from the Settlement Fund $10,000 to each Plaintiff.

19. In summary,

a. Plaintiffs' Counsel are awarded attorneys' fees of $119,975,000 (one-third of the $359,925,000 Settlement Fund), plus earned interest;

b. Plaintiffs' Counsel are awarded litigation expenses of $14,674,964.91, plus earned interest;

c. Plaintiffs' Counsel are permitted to set aside $3,500,000 of the Settlement Fund to create a fund for future litigation expenses incurred in this litigation for the common benefit of Plaintiffs and the proposed class;

d. Named Plaintiffs Jason Goldman, Jeffrey Weaver, Billie Jo White, Brandon Watters, Priscilla Parker, Patrick Parker, Barry Amar-Hoover, Joshua Kabisch, Meghan Cherry, and Maya Haynes are granted service awards of $10,000 each for their contributions to the litigation; and

e. These amounts shall all be immediately paid payable from the Settlement Fund, subject to the conditions for attorneys' fees and expenses described in paragraph 15 above.

IT IS SO ORDERED.

WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE